IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| TIMMY T. HARRIS | * | |
| Plaintiff, | * | |
| v. | * | 1:05-CV-1077-MHT |
| | | (WO) |
| HAL COX, *et al.*, | * | |
| Defendants. | * | |

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, Timmy Harris ["Harris"], filed this 42 U.S.C. § 1983 action on November 8, 2005. He alleges that Defendants violated his constitutional rights when they unlawfully arrested him, subjected him to an unlawful search and seizure, placed him on lockdown in the Dale County Jail as punishment, and denied him access to the courts.[1] Named as defendants are Hal Cox, a Dale County Deputy Sheriff, and Bryant Mixon, Sheriff of Dale County, Alabama. Harris seeks $100,000.00 in damages and requests that the court review his allegations against the named defendants.

In accordance with the orders of the court, Defendants filed an answer, special report, and supporting evidentiary material in response to the allegations contained in the complaint. The court then informed Harris that Defendants' special report may, at any time, be treated as a motion for summary judgment, and the court explained to Harris the proper

---

[1] Since filing this action, Harris has been released from custody.

manner in which to respond to a motion for summary judgment. Harris filed a response to the special report filed by Defendants. This case is now pending on Defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Harris' opposition to the motion, the court concludes that Defendants' motion for summary judgment is due to be granted.

## I. STANDARD OF REVIEW

To survive the properly supported motion for summary judgment filed by Defendants, Harris is required to produce some evidence which would be admissible at trial supporting his constitutional claims. Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576 -1577 (11th Cir. 1990). A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing adequate to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.

*Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).

Where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Wright v. Southland Corp.,* 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson,* 88 F.3d 1573, 1584-1585 (11th Cir. 1996). Summary judgment is therefore appropriate when the pleadings, admissible evidentiary materials and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), *Federal Rules of Civil Procedure*; *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Harris has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment.

## II. BACKGROUND

On September 8, 2005 Harris was in Newton, Alabama, which is located in Dale County. The events leading to Harris' appearance in Newton on September 8, 2005 apparently had their beginnings in Valdosta, Georgia. On September 7, 2005 Bruce Berry, a resident of Valdosta, reported to police officers with the Valdosta Police Department that a person known to him was repairing his car, a green Ford Tempo, but had taken it without his permission. Berry informed law enforcement officials that he had seen neither his car nor the individual who had been repairing it since September 6, 2005 at approximately 8:00 a.m., and he wished to prosecute. Berry's car was entered into the Georgia Crime Information Center (GCIC) as a stolen vehicle. (*Doc. No. 17, Exhs. C, D*.)

At approximately 8:20 a.m. on September 8, 2005, Defendant Cox responded to a dispatch reporting that a passing motorist had seen an individual throw a concrete block through the glass front door of Railside Auction House on U.S. Highway 231 in Dale County, Alabama. Upon arriving at the auction house, Defendant Cox observed that the building's front glass door was broken. He also observed a green Ford Tempo in the driveway of the auction house's parking lot which had been left running and had the trunk open. (*Doc. No. 13, Cox Declaration*.)

Newton Police Officer Paul Garrow also responded to the dispatch. When he arrived on the scene, he observed a black male wearing a tan shirt trying to exit the front of the building. When the suspect saw Office Garrow, he fled out the back door of the auction

house and ran across Highway 231 into the Whispering Lake Trailer Park. An all points bulletin went out for a black male fitting the description of the suspect seen running from the auction house. Officer Garrow also received information that the green Ford Tempo came back as a stolen vehicle out of Valdosta, Georgia. (*Doc. No. 13, Cox Declaration, Attachments at 8*.)

Defendant Cox drove over to the trailer park where he observed a black male fitting the description of the suspect. Prior to approaching the suspect, he stopped and spoke with a resident, Jimmy Snell, who informed Defendant Cox that a black male fitting the description of the suspect had come to his trailer seeking a ride to Montgomery. He stated that he informed the suspect that his car was not in good working order. The suspect then asked him if he had a change of clothes and whether he needed some yard work done. Mr. Snell put the suspect to work laying sod. Defendant Cox arrived at the trailer park approximately fifteen minutes after the suspect had begun putting out sod. (*Doc. No. 13, Cox Declaration and Attachments at 11, 12*.)

Defendant Cox called for backup. With the assistance of another law enforcement officer, Defendant Cox approached the suspect and informed him that he fit the description of a man seen throwing a concrete block through the auction house and that they were also investigating a burglary of the store. Harris proceeded to inform the officers that he was buying the vehicle parked in front of the auction house. In the meantime, as noted, law enforcement officials had learned that the green Ford Tempo had been stolen in Valdosta,

Georgia, and they also determined that Harris had outstanding warrants for his arrest. Based on this information, Harris was taken to the Dale County Jail for processing. Defendant Cox returned to the auction house and assisted with the investigation of the break-in which was being performed by Officer Kenneth Latham, Officer Garrow, and Chief Oliver, all of the Newton Police Department. The police officers took a plastic coke bottle and a bottle of Thunderbird wine from the front seat of the Ford Tempo and a box of CDs from the trunk of the car which had been taken from inside the auction house. Inside the building, law enforcement officials found a cammo colored hat as well as a ladder and iron pieces used to break down the front door. The officers also obtained fingerprint and shoe print evidence from the crime scene. (*Doc. No. 13, Cox Declaration and Attachments at 6, 8-12.*)

At the Dale County Jail, Harris agreed to provide a statement and waived his *Miranda* rights. Defendant Cox conducted an interview with Harris who stated that he purchased the Ford Tempo from Berry, that he lost his way going to Montgomery, Alabama, from Valdosta, Georgia, and ended up spending the night in Dothan, Alabama. Harris further stated during the interview that he had not stolen the Ford Tempo. (*Doc. No. 13, Cox Declaration and Attachments at 13*.)

Jail officials placed Harris in a holding cell at the county jail until he was processed. He subsequently had counsel appointed to represent him on the charges filed against him in Dale County. These charges included receiving stolen property in the first degree and third degree burglary. The Alabama Uniform Incident/Offense Report detailing the charges

6

against Harris was prepared the same day he was taken into custody as was the Alabama uniform arrest report, *i.e.*, September 8, 2005. (*Doc. No. 13, Cox Declaration and Attachments at 4-13.*)

### III.  DISCUSSION

*A. Injunctive Relief*

Harris is no longer incarcerated at the Dale County Jail. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that Harris is no longer housed at the county jail, any request for declaratory and/or injunctive relief has been rendered moot.

*B.  Claims Against Defendants in their Official Capacity*

To the extent Harris sues Defendants in their official capacity, they are immune from suit. Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). Under all facets of Alabama law, a county sheriff and his jailers act as state officers "when supervising inmates and otherwise operating the county jails." *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff as member of

7

State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (county sheriff is executive officer of the State).

> [A] state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that Defendants, as a State of Alabama Sheriff and Deputy Sheriff, are entitled to absolute immunity from the claims asserted by Harris against them in their official capacity. Accordingly, Harris' claims for monetary relief against Defendants Mixon and Cox in the official capacities are barred by the Eleventh Amendment and are subject to dismissal.

*C.  The Individual Capacity Claims*

  *i. The Respondeat Superior Claim*

Harris makes no specific allegations against Sheriff Mixon. The law is well settled that an Alabama "Sheriff can have no respondeat superior [or vicarious] liability for a section 1983 claim." *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001); *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious

8

liability."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Florida*, 402 F.3d 1092, 1115-1116 (11th Cir.2005) (In establishing liability under § 1983, a prisoner cannot rely on theories of vicarious liability or respondeat superior.). Thus, Sheriff Mixon is liable only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted). "'The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.' [*Hartley*, *supra*.] (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)." *Gray*, 458 F.3d at 1308. To sufficiently notify the supervisor, the deprivations must not only be widespread, they also "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown*, 906 F.2d at 671.

It is undisputed that Sheriff Mixon did not personally participate in any of the actions about which Harris complains. Further, Harris has presented no probative evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Sheriff Mixon

failed to take corrective action. The court, therefore, concludes that the motion for summary judgment as to Harris' claims against Defendant Mixon on the basis of respondeat superior is due to be granted.

*ii. Fourth Amendment Claims*

*a. Qualified Immunity*

Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002) quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002). Here, it is clear and undisputed that Defendant Cox was acting within the course and scope of his discretionary authority when he arrested Harris. "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*

The United States Supreme Court has set forth a two part test for the qualified immunity analysis. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer,* 536 U.S. 730, 736 (2002); *Saucier v. Katz,* 533 U.S. 194, 201 (2001). "If no

constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201. However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" *Vinyard,* 311 F.3d at 1346, quoting *Saucier,* 533 U.S. at 201. Thus, the court must first analyze whether the actions of Defendant Cox, taken in the light most favorable to Harris, violated his constitutional rights.[2]

### b. Unlawful Arrest

In his complaint, Harris contends that Defendant Cox "lied and/or falsified information to obtain an arrest warrant on the Plaintiff's case [for] receiving stolen property." Harris maintains that Defendant Cox took such action in order to gather false statements and evidence against him. (*Doc. No. 1 at 3*.)

The Fourth Amendment affords an individual the right to be free from arrest unless probable cause justifies the arrest. *Motes v. Myers*, 810 F.2d 1055, 1059 (11th Cir. 1997). The existence of probable cause at the time of arrest constitutes an absolute bar to a 42 U.S.C. § 1983 claim for false arrest. *Marx v. Gumbinner,* 905 F.2d 1503, 1505-6 (11th

---

[2]If, in doing this, the court finds that no constitutional right was violated, the inquiry ends there and the defendant is entitled to qualified immunity. If the facts disclose a constitutional violation, however, the court then must ask whether, at the time the violation occurred, "every objectively reasonable police officer would have realized the acts violated already clearly established federal law." *Garrett v. Athens-Clarke Co.,* 378 F.3d 1274, 1278-79 (11th Cir. 2004).

Cir.1990). Probable cause to arrest exists when an arrest is "objectively reasonable based on the totality of circumstances." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002)). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (internal quotation marks and citations omitted). Furthermore, even if the defendant lacked actual probable cause to make the arrest, he would nevertheless be entitled to qualified immunity if there was "arguable probable cause" for the plaintiff's arrest. *See Davis v. Williams,* 451 F.3d 759, 762-63 (11th Cir. 2006) (stating that in the context of a claim for false arrest, an officer is entitled to qualified immunity where that officer had "arguable probable cause" to effectuate the arrest); *Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999) (same); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (law enforcement officials entitled to qualified immunity where they reasonably, but mistakenly, determine that probable cause exists); *Skop v. City of Atlanta*, 485 F.3d 1130, 1137-38 (11th Cir. 2007) (same). Arguable probable cause exists where an objectively reasonable officer in the same circumstances and possessing the same knowledge as the officer effectuating the arrest could have believed that probable cause existed. *Jones*, 174 F.3d at 1283; *see also Thornton v. City of Macon,* 132 F.3d 1395, 1399 (11th Cir. 1998). Additionally, under federal and state law, "the validity of an arrest does not turn on the

offense announced by the officer at the time of the arrest." *Lee,* 284 F.3d at 1196. Where probable cause existed to arrest Harris for any offense, his arrest and detention were valid even if probable cause was lacking as to some of the offenses with which he was charged or even as to all the announced charges. *Id.*

Harris fails to provide any factual support for his conclusory allegation that Defendant Cox falsified information in order to obtain an arrest warrant against him for receiving stolen property. Harris also fails to allege facts which show that law enforcement officials lacked probable cause to arrest him on September 8, 2005 and presents no facts to support his conclusory allegation that the Alabama Uniform Arrest Report which charged him with third degree burglary and first degree receiving stolen property was invalid. Further, Harris' opposition reflects that he seems to believe that Defendant Cox could not arrest and/or charge him with receiving stolen property under Ala. Code § 13A-8-17 when he knew that the State of Georgia had already charged him for motor vehicle theft. (*Doc. Nos. 17, 21*.) Viewing the information known to Defendant Cox as articulated *infra*, however, he had at the least, "arguable probable" cause to place Plaintiff under arrest for third degree burglary and first degree receiving stolen property[3] based on the facts known to him at the time including the events he personally witnessed, the information he obtained

---

[3] Under Alabama law, "a person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein." Ala.Code § 13A-7-7. Ala. Code § 13A-8-17 provides that "[r]eceiving stolen property which exceeds two thousand five hundred dollars ($2,500) in value constitutes receiving stolen property in the first degree."

from other law enforcement officials on the scene as well as other eye witnesses, and the information received from Georgia that the Ford Tempo was a stolen vehicle. Because Defendant Cox had arguable probable cause to arrest Harris on one or both of the charges, he is entitled to qualified immunity for any false arrest claims brought under § 1983.

### c. Illegal Search and Seizure

Harris claims that Defendant Cox failed to obtain a search warrant prior to searching the Ford Tempo. Harris further appears to allege that the Dale County Sheriff's Office did not have jurisdiction to pursue charges against him related to the vehicle because it was taken from the State of Georgia. The court will not re-visit the latter issue which it finds is essentially a restatement of Harris' allegation that he was unlawfully arrested on a charge of receiving stolen property. (*Doc. No. 1 at 3*.)

The undisputed evidentiary material before the court reflects that the Ford Tempo found in front of the Railside Auction House was a stolen vehicle.[4] Not only was the car reported stolen but when Harris fled the scene of the crime he had left the car running and the trunk open. (*See Doc. No. 13, Cox Declaration and Attachments at 6-10; Doc. No. 17, Exhs. C, D*.)

In order for Harris to be able to challenge the search in question, he "must establish

---

[4] The disposition of the charges brought against Harris in the District Court for Dale County, Alabama, is not discernable from the evidentiary material before the court.

14

that he . . . had a legitimate expectation of privacy in the place that was searched."[5] *United States v. Crisp*, 2008 WL 506214, *3 (M.D. Fla., February 21, 2008) (citing *Rakas v. Illinois,* 439 U.S. 128 (1978)); *see also United States v. Ford,* 34 F.3d 992, 995 (11th Cir. 1994) (defendant's legitimate expectation of privacy exists when he or she can show a subjective expectation of privacy that " 'society is prepared to recognize as "reasonable." ' ") (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967)). Here, Harris argues that the Ford Tempo, which he claims he "was in possession or control of," was searched without his consent and without a search warrant. However, not only does Harris not dispute the fact that the vehicle "in his possession" had been reported stolen but he also abandoned the car when he fled from police officers. These facts are sufficient to show that Harris did not have an expectation of privacy in the contents of the vehicle which were left open to the public. *See United States v. Harris*, 50 F.3d 11 (6th Cir. 1995) (table ) (unpubl.) (concluding that the defendant lacked standing to challenge the search of his vehicle after he fled the scene since he abandoned any expectation of privacy in the car); *United States v. Crecni*, 940 F.2d 663 (6th Cir. 1991) (table) (unpubl.) (holding that the defendant abandoned any expectation of privacy he had in any items found in his car when he fled his car in trying to elude the police). Because the undersigned finds that Harris had no expectation of privacy not only in the stolen vehicle but also a vehicle he abandoned, Defendant Cox's dispositive motion on Harris' Fourth Amendment illegal search and seizure claim is due to be granted.

---

[5] Harris does not indicate whether any articles removed from the vehicle were introduced as evidence against him in any criminal proceedings.

### iii. The Lockdown Claim

Harris alleges that Defendant Cox placed him on lockdown at the Dale County Jail to punish him. (*Doc. No. 1 at 3*.) The court understands Harris to allege a claim that his placement on lockdown for purposes of punishment violated his right to due process.

Defendant Cox denies that Harris was ever placed in lockup at the county jail. Jail Administrator James Willis affirms that Harris was booked into the Dale County Jail on September 8, 2005 at approximately 9:20 a.m. Jail officials then placed Harris in cell block 4 which contains four (4) two-man cells. It also has a television and a phone. Willis affirms that Harris was never placed on lockdown from the day he was booked into the jail through the signature date of Willis' affidavit, *i.e.* January 12, 2006. (*Doc. No. 13, Cox and Willis Declarations*.)

In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court set forth the Constitutional framework for evaluating the due process claims of pretrial detainees. The Court held that the Due Process Clause prohibits the punishment of a pretrial detainee "prior to an adjudication of guilt in accordance with due process of law." *Id*. at 535. The Court recognized that not every condition imposed on a pretrial detainee, however, amounts to impermissible punishment. *Id*. at 539 ("If a particular condition or restriction of pretrial detention is reasonably related to a legitimate government objective, it does not, without more, amount to 'punishment.' "). *See also Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004); *McMillian v. Johnson*, 88 F.3d 1554, 1564 (11th Cir. 1996); *Higgs v. Carver*, 286

F.3d 437, 438 (7th Cir. 2002).

Here, Harris has failed, after being given an opportunity to do so, to refute Defendants' evidentiary material which reflects that he was never placed on lockdown status let alone placed on lockdown for the purpose of punishment while incarcerated at the Dale County Jail. The only evidence before the court refutes Harris' conclusory allegation in this regard. Summary judgment is therefore due to be granted in favor of Defendants on Harris' due process claim. *See Celotex Corporation*, 477 U.S. at 324; *Brown*, 906 F.2d at 670.

> *iv. The Access to Courts Claim*

Harris contends that while incarcerated at the county jail he was denied access to the courts. He complains that the jail lacked a library, notaries, and "materials." (*Doc. No. 1 at 3*.)

The law is well established that the fundamental constitutional right of access to the courts requires prison authorities to provide prisoners with adequate law libraries or adequate assistance from persons trained in law to prosecute both post-conviction proceedings and civil rights actions. *Bounds v. Smith*, 430 U.S. 817 (1977), *Younger v. Gilmore*, 404 U.S. 15 (1971). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court concluded, however, that actual injury is required to state a claim for denial of access to the courts. *Id.* at 351-52. Such injury will be shown when an inmate can "demonstrate that a non-frivolous legal claim has been frustrated or was being impeded." *Id.* at 353. The *Lewis* Court disclaimed any expansions of the right of access to the court which suggested "that the State

17

must enable the prisoner to discover grievances, and to litigate effectively once in court." *Id*. at 354.

Here, Harris has not established a viable claim that he has been denied access to the courts. He has not shown that Defendants engaged in conduct that so hindered his efforts to pursue a non-frivolous legal claim or that his inability to access a library or unspecified materials or utilize the services of a notary caused him to experience adverse consequences or an actual injury from the alleged deprivations. *Lewis*, 518 U.S. at 349. Further, preparation for a criminal trial was the responsibility of Harris' appointed counsel regardless of any additional legal work in which Harris may have wished to engage. While Harris may have wished to take a more active role in his criminal proceedings, this is insufficient to demonstrate a lack of access to the courts as contemplated in *Lewis*. Because Harris' allegations fail to articulate any "actual injury" accruing to him based on his contention that he was denied access to the courts, Defendants are due to be granted summary judgment on this claim.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (*Doc. No. 13*) be GRANTED;

2. Judgment be ENTERED in favor of Defendants and against Plaintiff;

3. This case be DISMISSED with prejudice; and

4. Costs be TAXED against Plaintiff for which execution may issue.

It is further

ORDERED that the parties shall file any objections to the Recommendation on or before **March 18, 2008**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

Done, this 6th day of March 2008.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE